UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES RAMIREZ,

        Plaintiff,

                                                Case Number: 10-13408-BC

v.                                          Honorable Thomas L. Ludington

CITY OF SAGINAW, GERALD CLIFF,
ANJANETTE TUER, and DENNIS JORDAN,
in their individual and official capacities,

        Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

While off duty in August 2008, Plaintiff Charles Ramirez, a Hispanic police officer employed by Defendant City of Saginaw, drove his vehicle into the side of a house in Saginaw Township. Intoxicated at the time, the incident resulted in Plaintiff being charged with his second offense of operating a vehicle while intoxicated. Following an internal affairs investigation, Plaintiff was terminated from the police force. Alleging that he was discriminated against because of his race and his disabilities (alcoholism and post traumatic stress disorder), Plaintiff has brought suit under federal and state law against the city, the city's director of employee services, the chief of police, and the officer who conducted the internal affairs investigation. Defendants now move for summary judgment, arguing that Plaintiff has not identified a similarly situated Caucasian employee who was treated more favorably than Plaintiff. For the following reasons, Defendants will be granted summary judgment on

Plaintiff's § 1983 claims of race discrimination and the exercise of supplemental jurisdiction over Plaintiff's remaining state law claims will be declined.

## I.

### A.

Plaintiff began working for the City of Saginaw Police Department in 1991. In 1996, he left, but rejoined the department the following year. While off duty on March 23, 2001, Plaintiff was arrested and charged with operating a vehicle while intoxicated. Acknowledging that he had a drinking problem, Plaintiff pled guilty to the charged offense. The city referred Plaintiff to an employee assistance program for alcohol abuse, which Plaintiff completed. The department also undertook an internal affairs investigation, which resulted in the department suspending Plaintiff for five days.

Several years passed without incident. In the early morning hours of August 16, 2008, Plaintiff crashed his vehicle into the side of a home in Saginaw Township. The woman sleeping within the home was knocked from her bed, but was uninjured. The home, however, sustained significant damage. A blood test revealed that Plaintiff's blood alcohol content to be .22 percent, a little less than three times the legal limit. Plaintiff was arrested and charged with a second offense of operating while intoxicated. Because the accident occurred in Saginaw Township, not the City of Saginaw, the criminal investigation was undertaken by the Saginaw Township Police Department, not Plaintiff's employer.

When his employer learned of the incident, it immediately placed Plaintiff on paid administrative leave, informing him he should not report to work on his next scheduled shift. The department then initiated an internal affairs investigation.[1]

Independent of the department's actions, Plaintiff sought out and entered an alcohol abuse treatment program. Unlike the employee assistance program Plaintiff entered in 2001, however, the alcohol abuse treatment program he entered in 2008 was not suggested by (or sponsored by) the city. Plaintiff's therapist, Dr. John Evans, diagnosed Plaintiff as an alcoholic suffering from posttraumatic stress disorder caused by traumatic events Plaintiff had experienced as a police officer. "It is my opinion," Dr. Evans wrote to Plaintiff, "that your drinking was an attempt to self-medicate the symptoms of [posttraumatic stress disorder] that you were experiencing." Defs.' Mot. Summ. J. Ex. 14, at 2, ECF No. 43-15 ("Defs.' Mot.").

As part of the internal affairs investigation, the police sergeant leading the inquiry, Defendant Anjanette Tuer, interviewed Plaintiff and the responding officers, listened to the audio recorded inside the patrol car between Plaintiff and the responding officers, and reviewed photos taken at the scene and the results of Plaintiff's blood test. Based on this evidence, Tuer determined that Plaintiff was in fact driving under the influence of alcohol and therefore violated police department regulations. Defs.' Mot. Ex. 10, at 4.

During Tuer's interview with Plaintiff, Plaintiff asserts, Tuer "told me I should get over to City Hall and file a duty disability." Pl.'s Dep. 71:6–7, May 16, 2011, *attached as* Defs.' Mot. Ex. 2. Tuer does not recall recommending this. *See* Tuer Dep. 16:23–17:1, May 31, 2011,

---

[1] As an aside, it should be noted that following the August 2008 incident, Defendants did not refer Plaintiff to an employee assistance program. Rather, they placed him on administrative leave and initiated an internal affairs investigation. That is, Defendants did not proceed on parallel tracks — remedial and disciplinary — as they did in response to the March 2001 incident. Rather, Defendants unequivocally focused on the internal affairs investigation.

*attached as* Defs.' Mot. Ex. 15. After the interview, the Plaintiff went to the police and fire pension board and filed a disability application. The board sent Plaintiff to Dr. Harvey Ager for examination. Once there, Dr. Ager explained to Plaintiff that "pending a report from his treating physician, Dr. Evans, and pending my report, if they are both in agreement that he is disabled, he may be eligible for a duty related disability pension; otherwise, they may have to have him evaluated by a third physician, more or less a tie breaker." Defs.' Mot. Ex. 16, at 13.

Once Tuer completed the internal affairs investigation, she forwarded her findings to the chief of police, Defendant Gerald Cliff. On October 28, 2008, Cliff wrote to the city's director of employee services, Defendant Dennis Jordan, recommending that the city terminate Plaintiff's employment. "Writer finds that [Plaintiff's] actions represent conduct that cannot be tolerated on the part of any member of a law enforcement agency," Cliff wrote. Defs.' Mot. Ex. 11, at 2. "Although [Plaintiff] emphasizes that he is currently . . . undergoing intensive alcohol abuse treatment and has since this incident, been diagnosed with Post Traumatic Stress Syndrome, coincidentally, none of these mitigating actions or findings were addressed prior to being caught," Cliff elaborated, concluding: "Writer recommends that Officer Ramirez be terminated from the Saginaw Police Department." *Id*. at 2–3.

On November 3, 2008, the city manager, Darnell Earley, terminated Plaintiff's employment. Defs.' Mot. Ex. 12, at 1. The notice of termination, after reciting the facts of the August 16 incident, explained:

> The alcohol test results showed you had a blood alcohol level of .22. Your actions are in direct violation of Saginaw Police Department General Orders 01, Member Conduct 03, paragraphs D Conformance to Laws, O Use of Alcohol off-Duty and PP Conduct While Off-Duty. You have been progressively disciplined over the years and have had mandatory referrals to [an employee assistance program in 2001, yet] neither has corrected your behavior. Repeated unacceptable and unprofessional conduct is considered an extremely serious situation, which has

> irreparably eroded your credibility as a Saginaw police officer. Therefore, it has been determined that your employment with the City of Saginaw is terminated, effective immediately.

*Id*. at 2. The "General Orders" referenced in the notice of termination provide in pertinent part:

> D. Employees shall obey all the laws of the United States and of any state and local jurisdiction in which the employees are present. . . .
>
> O. Employees while off duty shall refrain from consuming intoxicating beverages to the extent that it results in behavior which discredits the Department or renders the employee unfit to report for the next regular tour of duty.
>
> PP. Activities engage in, or action performed while off-duty by an employee, may be subject to discipline if the activity or action reflects negatively upon the Police Department, discredits the Police Department, or may affect the employee's performance as a City of Saginaw employee.

Defs.' Mot. Ex. 13, at 1, 2, 3.

Little more than a month after Plaintiff was terminated, Dr. Ager completed his report for the police and fire pension board. Agreeing with Dr. Evans that Plaintiff was alcoholic, Dr. Ager disagreed on whether Plaintiff suffered from posttraumatic stress disorder. Defs.' Mot. Ex. 16, at 16–17. Plaintiff was not disabled, Dr. Ager further concluded, because his alcoholism was in remission. After noting that Plaintiff had been terminated the previous month, Dr. Ager elaborated: "Based on my examination of today, I did not find [Plaintiff] to be disabled from performing his previous job duties . . . . On a psychiatric basis, I do not believe that he would be in need of any restrictions in order to perform those types of job duties, or for that matter, any other jobs for which he might be qualified in the field of general labor." *Id*. at 16.

Because the doctors' diagnoses differed, in order to pursue his duty-related disability pension from the police and fire pension board, Plaintiff was obligated to obtain the opinion of a third physician. He did not do so.[2]

In March 2009, Plaintiff pled guilty to the second offense of operating while intoxicated. Some time thereafter, he filed an employment discrimination claim with the Equal Employment Opportunity Commission. The EEOC declined to pursue an enforcement action against Defendant, mailing Plaintiff a right-to-sue letter on January 5, 2010.

**B.**

On February 23, 2010, Plaintiff filed a complaint in this Court contending that his employment was terminated because of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12300, and the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1101–.1607 ("MPDCRA"). After Plaintiff did not timely serve Defendant, the Court granted Defendant's motion to dismiss, concluding that "Plaintiff has neither demonstrated good cause for not serving the complaint within 120 days, nor that he properly served the complaint on Defendant." *Ramirez v. City of Saginaw*, Case No. 10-10739-BC, 2010 WL 3385304, at *2 (E.D. Mich. Aug. 24, 2010). The Court dismissed Plaintiff's complaint without prejudice. *Id.*

On August 25, 2010, Plaintiff filed this case. As in the previous case, Plaintiff's initial complaint asserted disability discrimination claims pursuant to the ADA and the MPDCRA. Defendant drafted a motion to dismiss the ADA claim as barred by the applicable statute of limitations and contacted Plaintiff to seek concurrence in the motion to dismiss. *See* E.D. Mich.

---

[2] As an aside, Plaintiff does not argue (and the record contains no evidence to suggest) that his application before the board for a disability pension in any way affected the department's decision to terminate his employment.

L.R. 7.1 (requiring parties to seek concurrence before filing motions); *see also* 42 U.S.C. §§ 12117(a), 2000e-5(f)(1) (requiring a plaintiff under the ADA to file a civil action within ninety days of receipt of a right-to-sue letter). Plaintiff's counsel asked Defendant's counsel to delay filing the motion so that Plaintiff's counsel could speak with his client. On September 17, 2010, before responding to Defendant's request for concurrence, Plaintiff filed an amended complaint asserting additional claims for race discrimination in violation of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983.

On October 1, 2010, Defendant filed a motion to dismiss Plaintiff's complaint contending that the ADA claim is barred by the statute of limitations, the § 1983 claim is not properly pled, and that the Court should decline to exercise jurisdiction over the state law claim. The Court granted Defendant's motion in part and denied it part, ruling: "Plaintiff's ADA claim is barred because it is untimely, but Plaintiff will be permitted to amend his complaint to supplement his factual allegations regarding race discrimination." *Ramirez v. City of Saginaw*, No. 10-13408-BC, 2010 WL 5439724, at *2 (E.D. Mich. Dec. 28, 2010). Plaintiff then amended his complaint once again, asserting claims for: (1) race discrimination in violation of 42 U.S.C. § 1983; (2) disability discrimination in violation of the MPDCRA; and (2) retaliation in violation of the MPDCRA. Second Am. Compl., ECF 17.

Defendants now move for summary judgment. ECF No. 43. First, Defendants contend, they are entitled to judgment on Plaintiff's race discrimination claim brought under § 1983 because he has identified no similarly situated Caucasian employees with similar infractions who were treated more favorably than Plaintiff. Next, Defendants argue, they are entitled to judgment on Plaintiff's state disability discrimination claims because Plaintiff has not established that he is disabled. Plaintiff responds that he has identified similarly situated individuals,

because at the time he was terminated, he had not yet been convicted. Second, Plaintiff argues, a genuine issue of fact exists as to whether he is disabled.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.

### A.

Section 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. "Because both Title VII and § 1983 prohibit discriminatory employment practices by public employers," the Sixth Circuit explains, "this court looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under §

1983." *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000). And when a plaintiff has no direct evidence of discriminatory intent, as in this case, the Sixth Circuit "applies the familiar *McDonnell Douglas* framework applicable in similar cases brought under Title VII." *Arendale v. City of Memphis*, 519 F.3d 587, 602 (6th Cir. 2008) (citing *Weberg*, 229 F.3d at 522). Under *McDonnell Douglas*, a plaintiff may establish a rebuttable presumption of discrimination by introducing evidence that he was: (1) a member of a protected class; (2) subject to an adverse employment action; (3) qualified for the position; and (4) treated differently than similarly situated employees outside the protected class. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

In this case, Defendants challenge the final element, arguing that Plaintiff has not identified a similarly situated Caucasian employee who was treated more favorably than Plaintiff. "To be deemed 'similarly situated,' [the] individuals with whom [the plaintiff] seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *see also Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 729 (6th Cir. 2004). That is, "the plaintiff must show that the 'comparables' are similarly-situated *in all respects*." *Mitchell*, 964 F.2d at 583 (emphasis in original) (citing *Stotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir.1988)). Thus, Plaintiff must compare himself to a Caucasian officer who engaged in the same type of conduct — incurring two arrests and charges for illegal conduct involving alcohol — and who was not terminated. Plaintiff has not done so.

The second amended complaint compares Plaintiff to five Caucasian officers who allegedly had alcohol-related incidents, yet were not discharged. *See* Second Am. Compl. ¶ 52. None of these officers, however, engaged in the same type of conduct as Plaintiff.

First, Plaintiff points to Officer Tim Llewelyn, asserting that he "was involved in no less than two documented incidents of off-duty criminal activities involving alcohol." *Id.* ¶ 52(A). Plaintiff, however, puts forward no evidence suggesting Officer Llewelyn was legally intoxicated on either occassion. The first incident involved Officer Llewelyn attempting to attract another officer's attention. "[H]e was talking to some women . . . . I pulled up and I stopped short of him and he was still talking to them. So I kept inching up towards him and when I didn't stop far enough, I cracked the [head]light on his patrol car with the front license plate on my truck." Llewelyn Dep. 4:9, 4:16–21, May 17, 2011, *attached as* Defs.' Mot. Ex. 21. Officer Llewelyn denies that he was intoxicated and Plaintiff has introduced no evidence to the contrary. Moreover, as a result of this incident, Officer Llewelyn was disciplined; he was ordered to pay for property damage he caused — a cracked headlight. This property damage, of course, is in stark contrast to the property damage Plaintiff caused when he drove his vehicle through the side of a home and into a woman's bedroom, knocking her from her bed.

Officer Llewelyn's second incident involved an accident in a neighboring township. When a deer darted in front of his truck on a rainy evening, Officer Llewelyn lost control of the vehicle. The airbags deployed, concussing him and knocking him unconscious. When he regained consciousness, he stumbled from the vehicle, only to be located by emergency responders in a nearby field. The department commenced an internal affairs investigation. The internal affairs complaint was dismissed, however, once it was determined that Officer Llewelyn was not intoxicated — his "BAC was only .07 and it appeared that his leaving the scene was a

result of his head injury and not alcohol." Defs.' Mot. Ex. 20, at 2. Thus, Officer Llewelyn is not similarly-situated; he did not engage in the same type of conduct as Plaintiff.

Second, Plaintiff points to Detective Jason Ball, asserting that he was "involved in a documented incident of off-duty criminal activity (i.e. domestic violence) involving alcohol." Second Am. Compl. ¶ 52(B). The single incident involving Detective Ball — an altercation with his wife in which he threw a cellular phone that injured her foot — did not result in arrest, charge, or conviction. Indeed, his wife refused to press charges. Nevertheless, the department commenced an internal affairs investigation, independently concluded that the officer's actions violated domestic violence laws, and imposed a three-day suspension. *See* Defs.' Mot. Ex. 22. Thus, like Plaintiff, Detective Ball's first alcohol-related incident resulted in a suspension. To the extent that Detective Ball's conduct on this occasion was similar to Plaintiff's conduct in 2001, both men were treated in a similar manner. Both men were reprimanded with a suspension for their first offense. Detective Ball, however, did not repeat his misconduct. And so he is not similarly-situated to Plaintiff.

Third, Plaintiff points to Defendant Tuer, asserting that she "was involved in a documented incident of off-duty criminal activity at Castaway's Bar." Second Am. Compl. ¶ 52(C). Drawing all reasonable inferences in Plaintiff's favor, a single verbal altercation with a patron is not the same as being arrested and charged with operating while impaired on two separate occasions. Indeed, on the advice of the city's attorney, no internal affairs investigation was initiated. Tuer is not similarly situated to Plaintiff.

Fourth, Plaintiff points to Officer Blake Hiben, asserting that he "was hired by the City of Saginaw . . . even though it was known that Officer Hiden had been arrested for off duty drunk driving." Second Am. Compl. ¶ 52(D). A single offense of drunk driving, although a

-11-

undoubtedly a stronger comparator than Tuer's conduct, is quantitatively and qualitatively different than the repeated conduct which resulted in Plaintiff's termination. Hiben is not similarly situated to Plaintiff.

Fifth and finally, Plaintiff points to Detective Matt Gerow, asserting that he "appeared at the scene of a crime, while off-duty and while intoxicated, with his service revolver even though his presence was not requested." *Id*. ¶ 52(E). Contesting this assertion, Defendants write that they "are unaware of any testimony or evidence relating to Officer Gerow and aver that there is no such act and / or lack of investigation / discipline relating to any conduct, off duty or otherwise." Defs.' Br. Supp. Mot. Summ. J. 13. Plaintiff, in his response brief, does not mention Officer Gerow, much less come forward with evidence substantiating Plaintiff's allegations regarding Detective Gerow's alleged misconduct. *See See* Pl.'s Pl.'s Br. Supp. Pl.'s Resp. Defs.' Mot. Summ. J. *passim*, ECF No. 47. Plaintiff has not established that Officer Gerow is similarly situated; indeed, he has not established any wrongdoing by this officer.

In sum, Plaintiff does not state a prima facie case of race discrimination because he does not identify any similarly situated employees outside the protected class who "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. Rather, the undisputed evidence demonstrates that when instances of alcohol-related misconduct were brought to the department's attention, the incidents were investigated and, when appropriate, the offenders disciplined, regardless of their race or gender. Moreover, they were disciplined in substantially similar ways as Plaintiff. Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1983 claims.

**B.**

Having dismissed Plaintiff's federal law claims, the exercise of supplemental jurisdiction over Plaintiff's remaining state law claims is declined.  28 U.S.C. § 1367(a) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  Indeed, "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."  *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006) (citation omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 478 (6th Cir. 2005) (noting that dismissal is the "clear rule of this circuit").  As the Supreme Court has emphasized, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *Gibbs*, 383 U.S. at 726.

**IV.**

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment (ECF No. 43) is **GRANTED**.

It is further **ORDERED** that Plaintiff's § 1983 claims are **dismissed with prejudice**.

I It is further **ORDERED** that the exercise of supplemental jurisdiction over Plaintiff's remaining state law claims is **DECLINED**.

It is further **ORDERED** that the hearing scheduled for Tuesday, December 13, 2011, at 3:00 p.m., is cancelled because the parties' papers provide the necessary factual and legal information to decide the motion. *See* E.D. Mich. L.R. 7.1(f)(2).

        s/Thomas L. Ludington
        THOMAS L. LUDINGTON
        United States District Judge

Dated: December 15, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 15, 2011.

        s/Tracy A. Jacobs
        TRACY A. JACOBS